## JOSEPH W. THOMPSON et al. v. DAVID ROSS.

Where there is a judgment against a party, and an execution is sued out, but before it is levied he dies, no *scire facias* is required to revive the judgment, but execution may be perfected forthwith by his personal representatives.

There is nothing in the policy or terms of the statute forbidding the execution

of a forthcoming bond, for the delivery of property by an executor or administrator.

It is not necessary that there should be either a judgment or an execution in form against the executors, in order to render the forthcoming bond valid against them.

The execution issued upon the forthcoming bond operates against the executors individually, and not in their capacity as executors; and the legal effect of the bond was to create a personal obligation; yet as an indemnity against that, the executors held the property which had previously been taken in execution.

In error from the circuit court of Tallahatchie county; Hon. F. M. Rogers, judge.

Daniel Ross recovered judgment in the circuit court of Tallahatchie county, against George L. Groce, on the 12th May, 1851, for $297.48. A *fi. fa.* was issued 6th June, 1851, and came to the sheriff's hands, 26th August, 1851. It was levied on a slave Mahala, as property of Groce, which was replevied by his executors, giving forthcoming bond for the property. The bond returned is made by Virginia E. Groce, executrix, and J. W. Thompson, executor of George L. Groce deceased, principals, and James N. Harper, security. The condition is, that whereas David Ross " sued out *fi. fa.* against the goods and chattels, lands and tenements of George L. Groce, which was issued in his lifetime for $297.48, with interest and costs, which said *fi. fa.* has been levied by the sheriff on a slave, as property of said Groce." Now, if said Virginia E. Groce, and J. W. Thompson, executrix and executor as aforesaid, shall have forthcoming and deliver to the sheriff at the court house said slave, on Monday the 10th of November, 1851, at 12 o'clock, that being the day appointed for the sale of said slave, to satisfy said *fi. fa.*, then the obligation to be void, otherwise in full force. Signed and sealed by V. E. Groce, executrix, and J. W. Thompson, executor, and James N. Harper. The bond was indorsed and returned in due form.

On the 25th December, 1851, a *fi. fa.* was issued on the forfeited bond, against V. E. Groce and J. W. Thompson, executrix and executor of George L. Groce, and James N. Harper as surety, which *fi. fa.* was received on the 15th January, 1852, and on the 14th May, 1852, levied on the slave Mahala.

On the 24th May, 1852, being the first day of the circuit court, defendants in execution entered their motion to quash the last-named *fi. fa.*, for three reasons. First, because there is no legal judgment on which said execution issued. Second, there was no execution against the defendants upon which the forthcoming bond was taken. Third, because the forthcoming bond is null and void, as there is no original judgment or *fieri facias* against the defendants, on which it was taken.

The motion was tried on the 26th May, 1852, and overruled by the court, to which the plaintiffs in error excepted and bring the case here by writ of error.

*D. C. Glenn* for appellants,

Contended the decision of the court below was erroneous, and filed an elaborate brief in the case.

*D. Shelton* for appellee,

In reply, cited and commented on 8 S. & M. 505; 9 Ib. 362; 6 Ib. 384; 11 Ib. 458; 4 Com. Dig. 248, (and n. G.); 2 Tidd, Pr. 1029; 3 S. & M. 34; 7 T. R. 20; 12 S. & M. 347; *Duncan* v. *Johnson,* 1 Cushm. 130; 2 S. & M. 193; 7 How. 606; S. & M. 116; 16 Johns. 348; 18 Ib. 558; 6 Ib. 543; 13 Ib. 562; Ib. 575; 12 Ib. 493; 2 Sch. & Lef. 712.

Mr. Justice HANDY delivered the opinion of the court.

The defendant in error recovered judgment on the 12th May, 1851, against George L. Groce, on which the writ of *fieri facias* was issued on the 6th June, 1851, received by the sheriff 26th August, 1851, and levied on a slave, as the property of Groce. His executors gave a forthcoming bond, reciting that " the writ of *fieri facias* issued in the lifetime" of the defendant, for the delivery of the slave in the usual form, which was duly returned forfeited, and an execution issued thereon against the executors and their surety on the 25th December, 1851, and levied on the 14th May, 1852, on the same slave originally levied on. At the return term of that execution, the defendants moved to quash it, 1st, because there was no legal judgment on which it issued; 2d, because there was no execution against the defend-

ants on which the forthcoming bond was taken; 3d, because the forthcoming bond and the judgment thereon are null and void for want of an original judgment or *fieri facias* against the defendants, the obligors in the bond.   The motion was overruled; to which the defendants excepted, and took this writ of error.

The first question presented is, Was it necessary that there should have been a judgment and execution against the executors, in order to support the forthcoming bond executed by them?

It will be observed here, that the execution was issued in the lifetime of the testator, the original defendant.   And the rule is, that if, on a judgment against a party, execution be sued out, but before it is levied he dies, no *scire facias* is required to renew the judgment, but execution may be perfected forthwith by his personal representatives.   Bingham on Judg. & Exec. 135 (11 Law. Lib. 57); Bac. Abr., title *Scire Facias*, c. 4; 3 S. & M. 34.   This execution was, therefore, regular as against the testator, and leviable of his goods and chattels in his executors' hands.

By the testator's death, all his goods and chattels, rights and credits devolved upon the executors, who thereby became invested with the power to do all acts necessary to their possession and enjoyment for the benefit of the estate.   The statute gives the right to execute a forthcoming bond to " the person whose property is levied on;" and at the time of the levy, the legal title in the slave was in the executors.   As executors, they were the " debtors" of the plaintiff in the execution, to the extent of being bound to submit the testator's property in their hands to the payment of it.   They could have " perfected the execution," either by paying the money, by submitting property in satisfaction of it, or by taking such legal steps as a means of payment as were secured to the testator by the usual forms of law and the customary course of proceeding in the payment of executions.   It was beneficial to the estate that the possession should be retained, as it saved expense and gave the executors the use of the property, and it was but taking the usual course of the law, and enjoying a privilege which the defend-

ant would have had if he had lived. There seems to be nothing either in the policy or terms of the statute forbidding the execution of such a bond, and we can see no detriment likely to result to estates from it. It was, therefore, competent for the executors to execute the forthcoming bond under the circumstances of this case.

It follows from these views, that it was not necessary that there should be either a judgment or an execution in form against the executors, in order to render the forthcoming bond valid against them.

If the bond was duly executed by them, and regularly returned forfeited, it also necessarily results that a judgment passed thereupon against them under the provisions of the statute, and therefore the first ground of the motion, is not well taken.

Again; the plaintiffs in error insist that the execution upon the forthcoming bond operates against them individually, and not in their capacity as executors. We think this position correct; but it affords no ground for quashing the execution. By the execution of the forthcoming bond and its forfeiture, the original judgment against the testator was discharged. A new judgment was rendered on the bond. And though it was competent for the executors to execute the bond, as having the legal title to the property levied on, and in order to retain the possession of the property as executors; yet the legal consequences attending the act are not to be avoided. The executors could make no new contract directly binding the estate. 1 Cushm. 53; 11 S. & M. 9. And the words "executor" and "executrix," added to their names in the bond and the execution issued on it, do not change the rule. The legal effect of the bond was to create a personal obligation. Yet, as an indemnity against that, the executors held the property which had previously been taken in execution. They had a right to pursue that course if they saw proper, rendering themselves personally liable, and discharging the judgment against the estate, and relying on the property of the estate in their hands as a security. But they have no ground of complaint, that the necessary legal consequences of their own voluntary act have followed. This rule

is a salutary one in reference to the powers of executors and administrators to bind estates in their hands, and it is a just one in reference to the rights of creditors, as is here shown.

The plaintiff here had a valid execution, which he was proceeding to enforce against the property of the deceased, which was subject to, and would have satisfied it. The executors arrest his proceedings by executing their bond discharging his judgment. If the judgment upon their bond is to be simply one against the estate, there may in the mean time have been many other judgments rendered against the estate, rendering it insolvent; so that, instead of getting his entire debt, which he would have done but for the stay of proceedings by the execution of the forthcoming bond, he has to take a new judgment against the estate, and come in for his ratable proportion only of the estate. It is, therefore, in strict keeping with the decisions of this court and the principles of justice, to hold that the original judgment against the estate was discharged, and that the judgment upon the forthcoming bond must operate against the obligors in their individual capacity.

The judgment is affirmed.

A petition for a reargument was filed in this case by the appellant, but the court refused to grant it.